Good morning. May it please the court. My name is Lisa Stark, and I represent the United States, the appellant in this case. With the court's permission, I plan to use 12 minutes for my initial argument and reserve 3 minutes for rebuttal. The district court's order suppressing evidence seized from a crime scene pursuant to a validly issued search warrant should be reversed for two separate reasons. First, the exclusionary rule should not be applied in this case, regardless of whether defendant's Fourth Amendment rights were violated. And second, the district court erroneously concluded that the seizure of the crime scene was unreasonable and violated the Fourth Amendment. Turning to the first basis for reversal, the exclusionary rule should not be applied in this case, regardless of the legality of the seizure. Even though it was a 33-hour seizure that kept Mr. Shah out of his house for a long period of time and shut down the business? Regardless, yes, Your Honor. Regardless of the legality of the seizure, there are two reasons. Well, first of all, it was a 33-hour exclusion from the residence and the business. Do we agree on that? We do not, Your Honor. Government submits the seizure was 25 and a half hours. Okay. Let's take 25 hours. We'll give you 25 hours. What case can you tell us about where there has been an exclusion seizure where the people are not in custody that would be comparable to this? The case, I think, does not involve a seizure, but it's an analogous situation, which the government would submit is actually more intrusive than a seizure of the premises. And it's a Supreme Court case, Riverside v. McLaughlin. And in that case, what the court said is that a delay of up to 48 hours is presumptively reasonable under the Fourth Amendment if the delay is the period from when the person is seized or arrested until he or she is presented to a judicial officer for a finding of probable cause. That's a really different situation, though. Are you aware of any case from this circuit or from the Supreme Court that has blessed as permissible a 25-hour or longer retention of a person from their own home similar to what happened here? Without a warrant. Without a warrant at that time. No, we are not aware of any case. However, we would submit that Riverside v. McLaughlin is actually more intrusive because besides the individual being kept from their home, they're actually locked up in a jail cell, not able to get into their home, not able to go to work, not able to do anything. And the standard in that case was precisely the same standard that's at issue in this case, the reasonableness under the totality of the circumstance. Let me ask you a question about the suppression half of your argument. There's a fairly old case from this circuit, 1988, called United States v. Das, and it didn't involve exactly this. It was about seized packages rather than a seized person. But our court did hold that evidence found after an unreasonably long warrantless seizure had to be suppressed. Has there been any intervening Supreme Court case or intervening en banc case from this court that would suggest that we are no longer bound by Das? Yes, I think there is, and that's United States v. Herring. It's a recent Supreme Court case that was decided just in January. And that is the second reason why we think the exclusionary rule should not be applied in this case. But Herring did not deal with a length of time question, did it? Excuse me?  Herring was a case in which somebody was arrested pursuant to a warrant and the information that it was an old warrant and actually outdated. But that came from some other part of the system. In this case, what we have is the arresting agency taking all deliberate speed, if you will, or leisurely, as the district court found, time to fill out an application for a warrant that took 33 hours from the time that the premises were secured until a warrant was obtained. So we're talking over a day of exclusion. And Mr. Cha had a need for diabetic medicine. He was excluded from the House for some part of that time. Isn't that right? I think what's important to look at is the time frame. And both the Supreme Court and this Court have specifically refused to hold police accountable for any portion of the delay that occurs during hours where judicial officers are presumptively less available to secure a warrant. In this case... The record does not reflect that. The record reflects there at previous times that, in fact, nighttime warrants have been obtained. However, in Guam, there is a legal presumption against the execution of warrants at nighttime, which is between the hours of 10 p.m. and 6 a.m., unless the police are searching either for firearms or narcotics, which was never the case. That is not the case here. And therefore, given that, that period of time under Supreme Court case law and the case law of this jurisdiction from United States v. Holtzman should not be attributable to the government because the warrant couldn't have been executed. Wait a minute. Part of the delay was the Officer Perez took an enormous amount of time preparing the warrant. Now, that may be commendable under some circumstances, but the seizure of the house occurred at 1.30 in the morning. We would disagree with that, Your Honor. Okay. When did it happen? It happened somewhere around 8 o'clock. And the reason it didn't... 8 o'clock? In the morning. In the morning. So what happened at 1.30? What they did is they closed down, they asked Mr. and Mrs. Cha to close down the premises because they had probable cause, defendants conceded this up to six times, of illegal activity. But to give the court an example as to why that does not constitute a seizure, and the seizure wasn't until at least 8 o'clock when they posted a police officer on the premises and denied access. When did he try to get access to the house? The record suggests he was outside sometime around 8 o'clock. The police did not know that he needed his medicines, which turned out not to be in the house anyway, until approximately 3 o'clock. Okay. So it was 8 o'clock. Let's take 8 o'clock. When did Officer Perez start working on the warrant? Officer Perez started working on the warrant at 6.30 at night. At night. So he took all day. And so he worked himself into a position where he's had a whole day in which to put a warrant together and get to a magistrate during the course of the day. And so he's now put himself and the department in a position where you're saying, well, now we get the benefit of overnight because there aren't any magistrates available. With all due respect, that's not the case. I don't think that's what the record reflects. The record reflects that the police, up to 11 officers from two different sessions, worked around the clock, continuously and over time, doing the variety of functions they had to do to process the defendant and three other co-defendants' cases. The Supreme Court in United States v. Segura said, in approving a very lengthy seizure of premises, said they were not going to second-guess the urgency or the priority, the police or the speed at which they perform a variety of functions when trying to secure a warrant. The reason for that is getting a warrant is the preferred method of getting evidence. And in fact, the Supreme Court has said that when you go to obtain a warrant or judicial determination of probable cause, delay is inevitable. And what the Supreme Court has said is, therefore, courts must provide a substantial degree of flexibility in evaluating the delay that passes when the police get a warrant. Now, there was good reason why Officer Perez, in response to your question, Your Honor, did not start getting the warrant until 6.30. First, seven witnesses who did not speak any English at all had to be interviewed to find out who was culpable and what happened. And there were multiple accounts. Four people ended up being arrested for multiple violations of local and federal law. The police were so anxious to move as quickly as they could, they had a civilian or one of the officer's wives stand in as an interpreter so interviews could be done simultaneously. And she worked from two in the morning way past noon on Sunday. Officer Perez also explained why he had to wait until 6.30 to get the reports. First, he explained, as the affiant of the warrant, it is his duty to ensure the absolute accuracy of the information, the reliability of sources, and that there is sufficient information to search the area and for the objects they want. He testified that in every single case, to make sure that what is presented to a judge in the affidavit is accurate, he reads all the police reports. We would suggest that's professional. In this case, though, there were two special reasons why he waited for the reports. First, he testified that it was the policy that when information is being derived from local patrol officers, that it is the policy of the police department not to include any information in the affidavit unless it is contained in a report. And that is to ensure accuracy for the benefit of the court so that there's not double and triple hearsay. The record reflects that the interviews of the witnesses were going on well into the afternoon. There's testimony that at 3 o'clock in the afternoon, the interviews were still ongoing. We're talking about interviewing people through an interpreter about the most sensitive and personal information that is possible. So under your analysis, then, because they are exceptionally careful, they could have carried this out over an even longer period of time. I'm not suggesting that they could have. They may have. It's a totality of the circumstances. And the question, as this court must know, as the Supreme Court said in Colorado v. Burdine, the question is not what could have been, but what the Fourth Amendment requires. Well, the Fourth Amendment talks about unreasonable searches and seizures. It does talk about unreasonable searches and seizures. I'm arguing that even if there's a Fourth Amendment violation, however, there's no remedy for it. Your argument when you get to Haring is that, okay, we violated the Fourth Amendment, but you can't do anything about it. Well, this court in United States v. Moniker just recently remanded a case because of Haring to follow Haring. And the exclusionary rule, as the Supreme Court has said, is not an individual right. It is a remedy created by the judiciary and is to apply only in the most extreme cases. It is a high obstacle, the Supreme Court recently said in United States v. Haring, for someone to establish that the exclusionary rule should apply. If I could move to that portion of my argument. Well, you have about a minute and a half left, and you may use it now or you may save it for rebuttal. I will save it for rebuttal. Thank you. Thank you, counsel. Thank you, Your Honor. Counsel? To please the court, Patrick Seville for Inhofe-Chonk. Your Honor, the first question I'd like to address is our waiver argument. We believe that the magistrate judge correctly decided the issues that were fairly presented to him based on the briefing and the issues raised in the testimony given during the hearing, and then that the district court properly sustained or approved the magistrate judge's recommendations. The battle lines in the hearing before the magistrate judge were drawn pretty clearly. We moved, the defendants moved for return of the seized property, particularly the $250,000, and for suppression of the evidence. The government responded with six defenses, six responses to our motion, none of which were the argument that, well, regardless of anything else, this search was incident to a search warrant. It simply wasn't raised. After three days of hearing, hearing from the police officers, from Cha's former lawyer and other witnesses, the court could reach the conclusion that, under the facts presented to it, the seizure was improper, was too long. The police waited too long to get a warrant, and the court then said we need to- Well, what's the waiver, though? I mean, there's an argument that you make that it's the fruit of the poisonous tree, but even if it's not the fruit of the poisonous tree, your argument, as I understand it, is that the seizure in and of itself was too long. That's the Fourth Amendment violation that you want a remedy for, and Herring comes along, as counsel has pointed out, and has made some fairly strong negative comments about the routine utilization of suppression. So how does this case differ from Herring in a material way that would suggest that, assuming that the seizure had nothing to do with whether or not the evidence was the fruit of an illegal activity, it's more a sanction, as Doss and our other cases suggest, for unreasonable exclusion of the defendant from his property, of a house and a business, from which they were excluded and were shut down while they go through this lengthy process? Is this the kind of sanction, exclusion, that should be imposed under these kinds of facts? Absolutely. It was the appropriate sanction. It's tied to the waiver. That's actually a separate issue than the waiver. We think the magistrate judge did not have that issue, didn't have Herring before him. Was Herring decided at the time the magistrate judge heard this case? I don't know, Your Honor. It's a little hard to raise Herring when it hasn't been decided. I thought the district court may have had it. I'm just curious where your waiver argument goes. I mean, the Herring speaks to an exclusionary rule, the suppression, rather, and as a court of appeal, we look to whether there's a question of law, and that's what I'm trying to figure out. All right. Your Honor, in specific answer to your question, once the court makes the determination that there was an illegal seizure, then the question becomes, is the proper remedy excluding the evidence? I will address that in just a moment. The waiver argument is that the government is saying, well, even if there was something wrong with the initial seizure, it doesn't matter because the police made a search incident to the warrant, and the evidence was discovered after the warrant had been issued. That wasn't raised and it wasn't argued in any meaningful way in front of the magistrate judge, and that's our waiver argument. I understand that. So where does that get you if Herring comes along and says, okay, they don't get to overrule the suppression order on that ground, but Herring says even if they violate the Fourth Amendment, you don't get it to sanction and discipline the police because this is a good faith. In fact, the government's arguing this was good faith. You just heard counsel go through all of the deliberateness to get a warrant, and why are we going to punish the police for being very careful? Well, you're not punishing the police. The magistrate judge and the district court were exercising important supervisory functions. What the magistrate judge found was wholesale failures by the police department to have any effective mechanism for ensuring proper processing of warrants, for having a protocol when the police seized property without a warrant and were planning to get a warrant, there was absolutely no protocol, no training by the police department about what the police officers should do, the need for alacrity, the need to move with all deliberate speed. Once again, taking the totality of the circumstances that the magistrate judge had before him, he said there were significant problems with the police conduct, and that's what the exclusionary rule... I want to go back to basics here. What specifically made this seizure too long in the circumstances? And the circumstances matter. If the question is, is somebody going to flush some drugs down the toilet or something, that's one thing. You had a much more complex situation here. What made the seizure so long as to become unreasonable within the meaning of the Fourth Amendment? The police went into the Blue House between midnight and 1 o'clock. They took control of the property. They pulled people out. They got customers. They told the owner to close down. So far, so good, right? Okay. They seized the place. That's fine. The girls say, we're being forced into prostitution. Okay, so you are agreeing with opposing counsel that there's probable cause. That's not the issue here. There was probable cause, yes. We conceded in front of the magistrate judge that as to the bar, there was probable cause for the police right at that moment to say, gee, there's prostitution going on here. They find the guy with his pants down, the girl coming out of the private room. This is not a child issue. It's a woman. It is not. So she's a woman coming out, right? I'm sorry, a woman, Your Honor, yes. All adults. At that point, when the police decided they do a, they don't call it a search, but they bring in the evidence tech and they go through the entire building, including the residence of my clients, and take photographs, they call it a scene check. At that point, everything they needed to get a search warrant, they had. They had probable cause at that point. So would you have a rule that says when we're looking at it after the fact, we can second guess and decide what moment in time is enough, and the police have to stop investigating and go get a warrant, even if they're mid-investigation? Is that your rule? No, we're not talking about stopping the investigation. They can keep investigating. If they didn't have probable cause, they shouldn't have seized the premises. But they thought they had probable cause. The officers and the testimony was clear. You don't have to call in the CIS detective. The officers could have gotten a warrant. Here's the thing that I think concerns me a little bit as I'm listening to your argument. If the search had been done initially without a warrant, you'd be here saying, hey, they've got to get a warrant. And that would have been a violation, a search without a warrant. So in this case, the police continue, put together a warrant, get a warrant, and your argument is, well, it took too long. And so what I'm trying to figure out is how do we decide whether it's too long? What lens do we look at? Is there a bright line rule that, you know, more than 12 hours? How do we decide what is too long and what factors, in your view, make this one too long? I think we take the totality of the circumstances. When does probable cause exist? Is there a magistrate available? There was a magistrate available. The government makes a big point. Well, we needed to do this really elaborate 17-page affidavit of probable cause because this is a human trafficking case. Did law enforcement officers have a duty officer to which they could apply for a warrant and for assistance in preparing the necessary documents to secure a warrant? I just missed the first part of that. I'm sorry. Did law enforcement have a duty officer available to assist in the preparation of the affidavit in support of the warrant and to consider the warrant and issue a warrant? That's part of the problem, no, in the sense that no one was assigned that responsibility. So by structure, the law enforcement in the outland of Guam is just a little deficient right now. Well, it gets worse than that. They had access to the prosecutor. There's an on-call prosecutor. The prosecutor was, and this is a local prosecutor, and the prosecutor was clueless. The prosecutor did nothing to prod them along. In fact, as we got up toward 930 the following Sunday night, the prosecutor said, oh, bring in your warrant, your affidavit tomorrow. I'll look at it in the morning. There was a systemic failure by the police department, and that's what the magistrate judge was addressing. Is this the way they consistently do business in Guam? I believe it. Well, it's not in the record. I believe it is, yes. I mean, I think the magistrate judge, and there is a reference in the record, I think, from my co-counsel just in passing that the magistrate judge is a former Superior Court judge on Guam and well familiar with the police practices there. So back to you, Your Honor, to your question about what's the standard. You look at the totality of the circumstances here. There simply was no reason why they could not get a warrant much sooner. And you read Perez's testimony. He gets no cooperation from anybody. The supervisors don't cooperate with him. The police officers, oh, we're busy. We're doing something else. He won't go down the hall to talk to them, to pull them out and say, hey, it's been 12 hours since we seized the place. I've got to get this warrant in. He insists on reading everything very carefully, and maybe that's fine, except he has no clue that there's an urgency here. All right. Now, Judge Fisher, going back to your question about, well, how do we get to exclusion, we think we have an unreasonable period of seizure. And the test, and this comes in Hudson and Segura both, I think. The test becomes, is there a connection? No, that's the wrong thing. I think Judge Scalia puts it. Has the taint of the illegality been purged by virtue of the warrant? So that you can say, so that the magistrate judge could have said, well, there was a search warrant. So even if the seizure was illegal, the taint of that seizure, that illegal seizure, has now been purged because of a warrant issued based on probable cause. That factors in our waiver argument because we don't think that issue was in front of the magistrate judge. Probable cause becomes an actuality if you seize the contraband. You just produce what you seized illegally and say, no, we'll take a warrant for that. This is ridiculous. I don't know if you're agreeing with me. I just don't see that after the fact, getting a warrant helps you one whit. You produce the illegal goods and say, there's goods that we took out of this house and we need a warrant now to cover us. Well, except, Your Honor, they didn't take the goods out until after they got the warrant. But, and this was a point. I believe they did seize some property. Well, they didn't seize the money. Actually, no, I don't think they actually seized any of the property before they got the warrant. That was the source of my original question to you. It's sort of two heads against the middle. Okay. And there, Your Honor, if I direct the court to the excerpts of record at page 340. And that, and page one, or paragraphs 146, 147, and 148 of the affidavit of probable cause, where the police say their knowledge about the money came from Cha's attorney, Mr. Vanderveld, who said, hey, and this is like 3 o'clock in the afternoon, that's in Vanderveld's testimony. There's $250,000 my client has in there for a project, a construction project he has going. That was the source of the information the police had about the money. It came from having my client standing out in the tropical sun cooking for, well, not for 33 hours, because there were dark stories. Well, that could have happened at any time. But your burden here, ultimately, under Haring, is to say, if you don't get the fruit of the poisonous tree type of exclusion, is there a sanction? Your answer, as I understand it, is you discipline the police department through the suspension remedy so that they will change their behavior and it won't happen again in the future. Exactly. And this case, Your Honor, there's one difference that, in Hudson and Segura, that the courts were very concerned about, is the government has not argued at any point along the way that this is a game-ending event for the government. Justice Scalia, and I keep mentioning him, but Berger, Justice Berger, Chief Justice Berger, have the same concerns. What about, you know, is there the balance between the Fourth Amendment and punishing the public by excluding truth-finding evidence? And here, the government's not saying, well, we have to dismiss if we don't have this evidence. They've never made that argument, and so that punishment to the public is not perceived punishment, is simply not present. Thank you, Counsel. Thank you, Your Honor. We have a short amount of rebuttal time remaining. Your Honor, I noticed my co-counsel went over a minute and 25, and I would ask for an allotted... Proceed, and we'll see how the argument goes. Thank you, Your Honor. I'd like to address the exclusionary rule. There's two reasons why the exclusionary rule does not apply in this case, neither of which defendants disputed at the hearing. First, the evidence at issue is not tainted by or a fruit of the allegedly unlawful seizure. That is because the evidence was seized pursuant to a validly issued warrant. Was that argued to the magistrate judge? Or, I mean, to the district court? The fruit of the poisonous tree? Yes. Yes. In fact, defense counsel's hardly in a position to argue that the issues were weighed before the magistrate, because it was defense counsel, both defense counsel, that raised the issue of the exclusionary rule before the magistrate. I'm quoting now from the supplemental excerpts of record at page 5. At the close of the suppression hearing, Mrs. Cha's counsel maintained, and a warrantless seizure for a period of time longer than reasonably necessary for the police acting with diligence to obtain a warrant is unreasonable. It is not sanctioned by the Supreme Court, and it brings into play the rule of exclusion. Co-counsel adopted that argument at page 14 and then argued at page 31 of the supplemental record that the evidence should be suppressed as a fruit of a poisonous tree. The magistrate apparently didn't understand counsel and said, fruit of a legal seizure based on lack of diligence is what you're arguing? Yes, lack of diligence in securing a warrant, Your Honor. Government counsel at the close of the suppression hearing also made the same argument about the exclusionary rule. She cited to the case of United States versus Lyon, which is exclusively an exclusionary rule case, and argued that the evidence should not be suppressed because the police relied on the judge's reasonable determination of probable cause. Third, if there is a waiver argument in this case, it belongs to the government, because the defense, although the government filed objections to the magistrate's report and raised the exclusionary rule, defense counsel never argued that the government's exclusionary rules were untimely. They're the ones that didn't present the argument to the district court. However, even if that were not the case, this court in United States versus Sherwood has held that the application of the exclusionary rule when raised in objections to a magistrate's report is not waived on appeal. Turning to the merits of our exclusionary rule. Counsel, you have well exceeded your time, and we understand your argument from your main presentation, and we will now submit this case. Thank you both. Thank you very much, Your Honors.
judges: Beezer, Graber, Fisher